## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Taylor Corporation,                                  Civil No. 19-1918 (DWF/TNL)

          Plaintiff,

v.                                                   **MEMORANDUM**
                                                     **OPINION AND ORDER**
Georgia-Pacific Consumer Products, LP,

          Defendant.

_____

Alain M. Baudry, Esq., and Michael R. Veenstra, Esq., Saul Ewing Arnstein & Lehr LLP, counsel for Plaintiff.

Barry M. Landry, Esq., Heather M. McElroy, Esq., and Jan M. Conlin, Esq., Ciresi Conlin LLP, counsel for Defendant.

_____

### INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendant Georgia-Pacific Consumer Products, LP ("Georgia-Pacific") (Doc. No. 10). For the reasons set forth below, the Court denies the motion.

### BACKGROUND

In April 2013, Georgia-Pacific and WorkflowOne LLC, Plaintiff Taylor Corporation's ("Taylor") predecessor in interest, entered into a one-year agreement for the purchase and sale of certain roll and cut sheet paper products. (Doc. No. 1-1 ("Compl.") ¶ 3, Ex. 1 (the "Agreement").) Under the Agreement, Georgia-Pacific agreed

to supply specified paper products to Taylor[1] and Taylor agreed to purchase no less than

2,000 tons of paper per month from Georgia-Pacific during the term of the Agreement,

which was set to expire on March 31, 2014.  (Agreement §§ 1, 2.)  The Agreement also

provides that if Georgia-Pacific discontinues manufacturing any of the specified paper

products, "it shall provide [Taylor] at least six (6) months prior written notice."  (*Id*.

§ 2.a. (the "Notice Provision").)  The Agreement also states: "[Taylor] makes no

commitment that the entire range of Products will be purchased from [Georgia-Pacific]"

and "[t]he purchase obligations of [Taylor] under this Agreement are nonexclusive."  (*Id*.

§ 2.a.)  However, Taylor was obligated to use commercially reasonable efforts to buy

from Georgia-Pacific unless Georgia-Pacific could not fulfill its requirements:

> [Taylor] will exercise commercially reasonable efforts to purchase the
> Products from [Georgia-Pacific] (subject to limitations imposed by
> [Taylor's] customers and the meeting of [Taylor's] quality and delivery
> requirements).

(*Id*. (the "Preferred Supplier Provision").)  The Agreement also contained a provision

requiring Taylor to keep Georgia-Pacific consignment stock on hand (the "Consignment

Provision"):

> [Taylor] agrees to purchase from [Georgia-Pacific] the Products and shall
> maintain the Products at the facilities set forth on Exhibit C. . . Both parties
> will set a target for the volume of Consignment Stock of approximately
> eight hundred (800) tons of Product at the Consignment Facilities. . .

(*Id*. § 5.)

---

[1]     Because Standard Register Company was a successor in interest to WorkflowOne
and Taylor is the successor in interest to WorkflowOne, the Court refers to Taylor
interchangeably with those entities as a contracting party.

In October 2014, Georgia-Pacific and The Standard Register Company (WorkflowOne's successor in interest) entered into a reinstatement and ratification of the Agreement, extending the Agreement's term to March 31, 2015. (Compl. ¶ 5, Ex. 2.) In February 2015, Georgia-Pacific and Standard Register amended the Agreement again, extending the term to March 31, 2016. (Compl. ¶ 6, Ex. 3.)

In November 2015, Standard Register amended the Agreement a third time, pursuant to which Standard Register assigned its rights under the Agreement to Taylor. (Compl. ¶ 7, Ex. 4 (the "Amended Agreement").) This amendment extended the term of the Agreement until October 31, 2018. The parties also removed the provision requiring Taylor to purchase a minimum of 2,000 products per month. (*Id.* at II.1c ("Sections 2(b) and 2(c) are deleted in their entirety.").)

In 2018, Georgia-Pacific and Taylor entered into a final amendment, extending the term to October 31, 2021. (Compl. ¶ 8, Ex. 5.) The Notice Provision, along with the Preferred Supplier Provision and the Consignment Provision, remained in all amended versions of the Agreement.

In early 2019, Georgia-Pacific notified Taylor that it could not commit to making any future deliveries of the specified products. (Compl. ¶ 9.) Georgia-Pacific then failed to deliver the products and Taylor initiated the present lawsuit. Taylor alleges that Georgia-Pacific breached the Agreement by failing to give six-months' notice of the discontinuance of the supply of paper products and, therefore, that they are entitled to damages for having to purchase their paper supply from other suppliers during that six-

month period.  Georgia-Pacific moves to dismiss Taylor's breach of contract claim in its

entirety.

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in

the complaint to be true and construes all reasonable inferences from those facts in the

light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th

Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v.*

*City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court deciding a motion to

dismiss may consider the complaint, matters of public record, orders, materials embraced

by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall*

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id*. at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," will not pass muster

under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S.

4

at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Breach of Contract

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) breach of an obligation imposed by the contract; and (3) damage to the plaintiff. *Micro Focus (US), Inc. v. Ins. Servs. Office, Inc.*, 125 F. Supp. 3d 497, 500 (D. Del. 2015).[2]  Because the relevant contract here relates to the sale of goods, it is governed by the Uniform Commercial Code ("UCC").  *See Barlow v. Delhaize Grp.*, Civ. No. 08-565, 2009 WL 1391413, at *7 (D. Del. May 15, 2009).

Taylor alleges that Georgia-Pacific breached the Notice Provision and that Taylor suffered damages as a result of the breach.  The Notice Provision requires Georgia-Pacific to give six months' notice before discontinuing the manufacture of certain paper products to Taylor.  There is no dispute that Georgia-Pacific failed to give Taylor six months' notice.  Instead, in its defense, Georgia-Pacific argues that when the parties amended the agreement in 2015 and removed Taylor's commitment to buy a minimum amount of product, the Amended Agreement became unenforceable as a matter of law.  *See, e.g.*, UCC § 2-201 ("contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing").  In support, Georgia-Pacific focuses on the removal of the 2,000 ton per month minimum purchase requirement from the Amended

---

[2]     The parties agree that Delaware law applies to the Amended Agreement. (Amended Agreement § II(1)(k).)  And in any event, both Minnesota and Delaware have adopted the Uniform Commercial Code.  *See* Minn. Stat. Ch. 336; 6 Del. C. § 2-201.

Agreement in 2015. After that amendment, Georgia-Pacific argues that there was no defined quantity of goods that Taylor was required to purchase or a specific formula for determining a quantity, and therefore, the contract was an indefinite quantities contract. Georgia-Pacific argues further that, under the UCC, an indefinite quantities contract is enforceable under only two circumstances—where the buyer agrees to purchase, and the seller agrees to supply, a minimum quantity of goods or where the contract is a requirements contract. *See Mason v. United States*, 615 F.2d 1343, 1346 n.5 (Fed. Cl. 1980); 6 Del. C. § 2-306(1); *Boydstun Metal Works, Inc. v. Cottrell, Inc.*, 519 F. Supp. 2d 1119, 1132 (D. Or. 2007) ("In general, a supply contract is either a definite quantity contract, an indefinite quantity contract, or a requirements contract."). Georgia-Pacific submits that the Amended Agreement fails to meet either exception because the parties removed the minimum quantity provision and because the contract states that it is "nonexclusive."

Taylor, however, argues that the Amended Agreement is not illusory because other terms, namely the Preferred Supplier Provision and the Consignment Provision, are sufficiently definite to satisfy the UCC's Statute of Frauds. Taylor submits that the Preferred Supplier Provision is an enforceable requirements contract, and that it demonstrates the parties' intent that Taylor purchase, and Georgia-Pacific sell, as much of Taylor's annual paper requirement as Georgia-Pacific is able to supply. Taylor further submits that the Amended Agreement's statement that "purchase obligations of [Taylor] under the Agreement are nonexclusive," is limited to circumstances where Georgia-Pacific is unable to "meet[] [Taylor's] quality and delivery requirements" related

6

to "limitations imposed by [Taylor's] customers." (Agreement § 2.a.) In support, Taylor

points to the language providing that once Taylor has exercised commercially reasonable

efforts to purchase from Georgia-Pacific, Georgia-Pacific was required to supply such

paper to Taylor. *See* § 2a ("Supplier will supply [Taylor] with the . . . products identified

on Exhibit A."). Taylor also argues that, at best, the Amended Agreement is ambiguous

as to whether the Preferred Supplier Provision is a requirements contract and, therefore,

not resolvable on a motion to dismiss.

The Agreement, after multiple amendments, was extended through 2021 and after

each amendment, the Notice Provision remained, as did Taylor's commitment under the

Preferred Supplier Provision to use "commercially reasonable efforts" to purchase as

much of Georgia-Pacific's paper as possible and the Consignment Provision. After the

Agreement was amended in 2015 (and the minimum quantity provision removed), Taylor

and Georgia-Pacific continued to perform under the Agreement and, as of August 2018,

Taylor was purchasing approximately 3,750 to 3,900 tons of paper from Georgia-Pacific

each month. (Doc. No. 21 ("Parker Decl.") ¶ 4, Ex. A.)[3]

The Court concludes that on the point of whether the Preferred Supplier Provision

constitutes a requirements contract, the Amended Agreement is ambiguous. Indeed, both

parties have proffered reasonable interpretations of the provision when considering the

purpose of the contract as a whole. Georgia-Pacific argues that when the minimum

---

[3]     Consideration of this affidavit does not convert Georgia-Pacific's motion to
dismiss to a motion for summary judgment. The Court cites the facts purely as
background and does not rely on the cited facts in making the ruling herein.

quantity provision was removed in 2015, the Agreement became unenforceable because the only term that related to a purchase quantity was the minimum quantity provision. However, as pointed out by Taylor, the Agreement contains two other provisions arguably relevant to quantity—the Preferred Supplier Provision and the Consignment Provision. Because there are two reasonable interpretations of the Amended Agreement, the ambiguity as to whether the Amended Agreement was a requirements contract cannot be resolved at the motion to dismiss stage. *See, e.g., Am. Original Corp. v. Legend, Inc.*, 652 F. Supp. 962, 966-67 (D. Del. 1986) (noting that "once an ambiguity arises" at the motion to dismiss stage, "the inquiry is at an end"). The issue of contract interpretation, therefore, must be considered at a later stage. Accordingly, Georgia-Pacific's motion to dismiss is denied.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Georgia-Pacific's Motion to Dismiss (Doc. No. [10]) is **DENIED**.

Dated:  January 29, 2020         s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge