UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Taylor Corporation, | Civil No. 19-1918 (DWF/TNL) |
|     Plaintiff and<br>    Counterclaim Defendant, | |
| v. | MEMORANDUM<br>OPINION AND ORDER |
| Georgia-Pacific Consumer Products LP, | |
|     Defendant and<br>    Counterclaim Plaintiff. | |

Alain M. Baudry, Esq., John A. Marty, Esq., Lauren Schoeberl, Esq., and Matthew R. Veenstra, Esq., Saul Ewing Arnstein & Lehr LLP, counsel for Plaintiff.

Barry M. Landy, Esq., Heather M. McElroy, Esq., Jan M. Conlin, Esq., and Kyle W. Wislocky, Esq., Ciresi Conlin LLP; counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Georgia-Pacific Consumer Products LP's ("Georgia-Pacific") motion in limine to preclude Plaintiff Taylor Corporation's ("Taylor") new cover damages calculation. (Doc. No. 118.) For the reasons set forth below, the Court grants Georgia-Pacific's motion.

## BACKGROUND

### A. Agreement between Taylor and Georgia-Pacific

In April 2013, Georgia-Pacific and WorkflowOne LLC, Taylor's predecessor in interest, entered into a one-year agreement for the purchase and sale of certain roll and

cut sheet paper products. (Doc. No. 74, Ex. 1 (the "Agreement").) Georgia-Pacific agreed to supply specified paper products to Taylor. (Agreement §§ 1, 2.) The Agreement was nonexclusive, but Taylor was obligated to use commercially reasonable efforts to buy from Georgia-Pacific unless Georgia-Pacific could not fulfill its requirements. (*Id.*)

In 2018, Georgia-Pacific and Taylor extended the term of the Agreement to October 31, 2021. (Doc. No. 74, Ex. 6.) Throughout the Agreement, Taylor purchased significant quantities of roll products from suppliers other than Georgia-Pacific. (Doc. No. 84, Ex. 2 at 12-14.) Taylor asserted that it created its paper supply plan based on Georgia-Pacific's forecasts by planning to buy the balance of its requirements that Georgia-Pacific was unable to provide from other suppliers. (Doc. No. 84, Ex. 32 at 5.) Georgia-Pacific claimed that the forecasts were estimates between the parties and would frequently be missed due to various challenges including equipment failure. (Doc. No. 84, Ex. 1 at 39.)

In 2017, Taylor increased its volume of paper purchased from 41,253 to 51,096 tons. (Doc. No. 96 ("Sec. Parker Decl.") ¶ 7.) Taylor sought to increase purchases from Georgia-Pacific but asserted that Georgia-Pacific could not fulfill all of Taylor's requirements. (*Id.* ¶ 8.) Georgia-Pacific acknowledged that Taylor could have purchased at least 60,000 tons annually, which would have entitled Taylor to the maximum "Tier 6" volume rebate under the parties' negotiated price schedule had Georgia-Pacific been able to supply that amount of volume. (*Id.*) In recognition of the fact that Georgia-Pacific was unable to supply all of Taylor's volume requirements, Georgia-Pacific agreed to

2

price Taylor's purchases based on the Tier 6 rebate level even though Taylor's actual purchase volume was thousands of tons short of the 60,000-ton mark.  (*Id.*; *see also* Doc. No. 84, Ex. 7 at 35.)

In December 2018, Georgia-Pacific notified Taylor that it would no longer manufacture the roll paper products that Taylor had been purchasing.  (Doc. No. 68, Ex. R ¶ 10.)  Soon after, Georgia-Pacific decided to exit the communication papers business entirely.

Taylor sued Georgia-Pacific, alleging that Georgia-Pacific breached their Agreement by failing to give six-months' notice of the discontinuance of the supply of paper products, and therefore, that they are entitled to damages for having to purchase their paper supply from other suppliers during that six-month period.  (Doc. No. 31 ("Am. Compl.") ¶¶ 14-18.)

**B.     Summary Judgment**

Both parties moved for summary judgment.  This Court held that an enforceable requirements contract existed between Taylor and Georgia-Pacific, and Georgia-Pacific breached the Agreement.  The Court also found that Taylor "was injured by having to pay more for paper it would have obtained from Georgia-Pacific but for Georgia-Pacific's breach."  (Doc. No. 112 ("Order") at 21.)

The Court granted Taylor's partial motion for summary judgment on liability but left open the issue of damages.  The Court encouraged the parties to jointly determine the exact amount of Taylor's cover damages but noted that the matter would proceed to trial if the parties could not agree.

C. **Motion in Limine**

The parties have not been able to reach an agreement regarding cover damages. Taylor initially submitted an expert report with its motion for summary judgment, estimating its cover damages to be between $3,015,000 and $3,520,000. (Doc. No. 66, Ex. N at 4.) The estimate was based on Georgia-Pacific's supply forecasts and Taylor's past purchases in 2017 and 2018. After summary judgment, Taylor modified its damages calculation, seeking damages for its entire volume for the six-month period, totaling $5,355,000.

Georgia-Pacific filed this motion in limine, arguing that Taylor's new damages calculation should be excluded because it was disclosed over a year after the close of discovery, contradicts the record, and prejudices Georgia-Pacific. In response, Taylor argues that the revised calculation merely removes an "unwarranted assumption." (Doc. No. 126 at 24.)

## DISCUSSION

Under Rule 37 of the Federal Rules of Civil Procedure, the Court "may impose sanctions on a party for failure to make initial disclosures, including computation of damages and supporting documents." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, Civ. No. 17-5009 (JRT/KMM), 2020 WL 5813291, at *4 (D. Minn. Sept. 30, 2020). "Disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). The Court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In

4

determining whether to impose sanctions, the Court considers (1) the reason for the noncompliance; (2) the surprise and prejudice to the opposing party; (3) the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial; and (4) the importance of the information or testimony. *Id.*

Applying these factors, the Court finds the late disclosure neither justified nor harmless. It is undisputed that the Agreement between Taylor and Georgia was nonexclusive. (Agreement § 2.a.). Taylor was obligated to purchase products from Georgia-Pacific in all but two limited situations, namely where Georgia-Pacific was unable to "meet[] [Taylor's] quality and delivery requirements" and "limitations imposed by [Taylor's] customers." (*Id.*) Taylor estimated its damages "based on the volume that Georgia-Pacific had indicated to Taylor that it planned to supply to Taylor in 2019 and the volume that Taylor had purchased from Georgia-Pacific during 2018." (Doc. No. 127 ("Veenstra Decl.") ¶ 6, Ex. 4.) In May 2018, Georgia-Pacific and Taylor discussed a "Ramp-up Plan" to increase supply to 4,000 tons per month. (Doc. No. 66, Ex. N at 8.). Jay Parker, Taylor's Vice President, stated in an email on May 29, 2018, "We think they might actually get us our 4,000 tons this next month." (*Id.*) The record indicates that Taylor expected at most 4,000 tons per month in the beginning of 2019, with the goal of increasing supply to 4,400 tons per month. (*See* Doc. No. 67, Ex. Q at 2.)

Now, less than four months before trial, Taylor has changed its damages calculation, asserting that it should be awarded damages for all of the paper it purchased during the six-month period. Although the type of damages Taylor seeks is the same, the new calculation is a surprise to Georgia-Pacific, and to the Court, because the calculation

contradicts the record. Nowhere in the record does Taylor indicate that it expected to obtain all of its requirements from Georgia-Pacific in 2019. During the term of the Agreement, Taylor never did obtain all of its requirements from Georgia-Pacific. (*See* Doc. No. 63 at 16.) To the contrary, the record shows that Taylor agreed to purchase what Georgia-Pacific was able to produce, but "Georgia-Pacific could not supply the volume Taylor required." (Order at 18; *see also* Doc. No. 84, Ex. 7 at 35.)

This case differs from *Acciona Windpower North America, LLC v. City of West Branch, Iowa*, where the plaintiffs initially requested damages for a five-year period but then revised their damages calculation after the court's summary judgment order limited damages to a two-year period. 847 F.3d 963, 969-70 (8th Cir. 2017). That is not what happened here. Taylor has not revised its damages calculation in compliance with this Court's summary judgment order. Rather, the new calculation challenges findings in the order—namely that Georgia-Pacific did not have the capacity to manufacture the full volume that Taylor required and, as a result, Georgia-Pacific agreed to pay Taylor a rebate level at a much higher volume than Georgia-Pacific was actually selling. (*See* Order at 7, 18.) Moreover, the new calculation contradicts depositions, interrogatories, and exhibits submitted by both Georgia-Pacific and Taylor, all of which indicate that Taylor expected to receive less than its full requirements from Georgia-Pacific in 2019. (Doc. No. 84, Ex. 7 at 35; Doc. No. 66, Ex. M at 2; Doc. No. 66, Ex. N at 8; Doc. No. 67, Ex. Q at 2; Doc. No. 84, Ex. 32 at 5.)

Taylor also has not explained why it took so long to revise the damages calculation. In its brief, Taylor mentions that it "didn't know then that Georgia-Pacific

had more than enough paper to supply its full requirements." (Doc. No. 126 at 6.) But Taylor knew that Georgia-Pacific supplied paper to other customers and actually provided the Court with information of Georgia-Pacific's sales to other customers in its motion for summary judgment over a year ago. (*See* Doc. No. 66, Ex. V at 3-8.) Even with this information, Taylor maintained that damages should be calculated based on Taylor's past purchases in 2017 and 2018 and Georgia-Pacific's production forecasts: estimated between 3,500 and 4,000 tons per month. (*See* Doc. No. 66, Ex. N at 23.) Taylor only changed its calculation after prevailing on the liability issue. Given the unreasonable delay, the Court finds the new disclosure unjustified.

As the Court concluded in the summary judgment order, Taylor was injured by "having to pay more for paper it would have obtained from Georgia-Pacific but for Georgia-Pacific's breach." (Order at 21.) Thus, one issue at trial will be determining the volume of paper Taylor would have been able to purchase from Georgia-Pacific from January through June 2019. Because Taylor has never alleged that it would have obtained 100% of its volume from Georgia-Pacific but for Georgia-Pacific's breach, Taylor will not be able to do so now. The Court therefore grants Georgia-Pacific's motion in limine and limits the potential cover damages that Taylor may request at trial to a maximum volume of 4,000 tons per month.[1]

---

[1] Georgia-Pacific alternatively asserts that Taylor's late disclosure should be barred based on judicial estoppel. Because the Court grants Taylor's motion on other grounds, the Court need not address this argument.

## CONCLUSION

For the reasons set forth above, the Court grants Georgia-Pacific's motion in limine.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Georgia-Pacific's motion in limine (Doc. No. [118]) is **GRANTED**. The maximum volume that Taylor may use to calculate cover damages at trial is 4,000 tons per month.

Dated:  August 24, 2022            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge